Daniel G. Sheldon (SBN 166793)
dsheldon@ssnlaw.com
Todd F. Nevell (SBN 170054)
tnevell@ssnlaw.com
SCOLINOS, SHELDON & NEVELL LLP
225 South Lake Avenue, Suite 200
Pasadena, California 91101
Telephone: (626) 793-3900
Facsimile: (626) 568-0930

Attorneys for Plaintiff CORINNE BOHRER

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CORINNE BOHRER, an individual, | CASE NO.: |
| Plaintiff, | **COMPLAINT FOR DAMAGES** |
| vs. | **(1) NEGLIGENCE; and** |
| | **(2)  CAL. GOV. CODE §§ 815.2 and 835** |
| UNITED STATES OF AMERICA, a governmental entity; CITY OF LOS ANGELES, DEPARTMENT OF AIRPORTS, also known as LOS ANGELES WORLD AIRPORTS, a governmental entity; and DOES 1 TO 10, inclusive, | **DEMAND FOR TRIAL BY JURY** |
| Defendants. | |

Plaintiff CORINNE BOHRER, an individual, files this Complaint against Defendants UNITED STATES OF AMERICA, a governmental entity ("USA"); CITY OF LOS ANGELES, DEPARTMENT OF AIRPORTS, also known as LOS ANGELES WORLD AIRPORTS, a governmental entity ("LAWA"); and DOES 1 TO 10; (collectively "Defendants") and alleges as follows:

**THE PARTIES**

1.      Plaintiff CORINNE BOHRER ("Plaintiff") is an individual who resides in the City of Los Angeles, County of Los Angeles, State of California.

2.       Defendant UNITED STATES OF AMERICA ("USA") is a governmental entity, a

- 1 -
COMPLAINT FOR DAMAGES

division of which is the United States Department of Homeland Security. The United States Transportation Security Administration ("TSA") is a division of the United States Department of Homeland Security with responsibilities for security and public safety at Los Angeles International Airport ("LAX"). Plaintiff's counsel is informed, and believes, and thereon alleges that TSA employs over 2,000 officers and personnel at LAX[1].

3.  Defendant CITY OF LOS ANGELES, DEPARTMENT OF AIRPORTS, also known as LOS ANGELES WORLD AIRPORTS ("LAWA") is a governmental entity which owns and operates LAX and (along with USA/TSA) has responsibility for public safety at LAX and ensuring that the premises are maintained in a safe condition. LAWA's primary place of business is 1 World Way, City of Los Angeles, County of Los Angeles, State of California, 90009.

4.  USA/TSA and LAWA have been served with administrative claims pursuant to the Federal Tort Claims Act ("FTCA") and California Tort Claims Act ("CTCA"), respectively.

5.  With respect to USA/TSA, on September 13, 2024, Plaintiff, through her prior counsel, submitted a written "Claim for Damage, Injury, or Death" to the TSA Claims, Outreach & Debt Branch via email and express mail. Prior to determination of the claim, on February 20, 2025, Plaintiff's present counsel submitted an Amended Claim to the TSA Claims, Outreach & Debt Branch via email and facsimile.

6.  By email dated February 27, 2025, the representative of TSA acknowledged receiving Plaintiff's Amended Claim stating as follows:

> "Dear Mr. Sheldon: The amended claim of Corinne Bohrer … against the United States under the Federal Tort Claims Act (FTCA) based on the alleged negligent or wrongful acts or omissions of Transportation Security Administration (TSA) personnel was filed on February 20, 2025, and will be handled by the TSA Chief Counsel Office. If the amended claim is denied, or is not resolved within 6 months after the filing of the amendment, Ms. Bohrer may file suit in an appropriate US District Court."

7.  While USA/TSA has acknowledged receiving the claim, no denial has been received by Plaintiff or Plaintiff's counsel as of this date. More than six months has elapsed since the filing of the Amended Claim with USA/TSA.

8.  With respect to LAWA, Plaintiff's current counsel submitted a written claim for

---

[1] See https://www.tsa.gov/about/employee-stories/los-angeles-employee-group-connects-workforce

COMPLAINT FOR DAMAGES

damages on February 7, 2025. After a period of more than 45 days elapsed after the date of filing of the claim, in accordance with California State law, on April 7, 2025, Plaintiff commenced litigation against LAWA by filing a Complaint against it, and others, in the Superior Court of the State of California, County of Los Angeles, Torrance Courthouse, in the matter entitled *Corinne Bohrer, plaintiff v. City of Los Angeles, Department of Airports, also known as Los Angeles World Airports, a governmental entity; and DOES 1 TO 10, inclusive, defendants,* L.A.S.C. Case No. 25TRCV01118. LAWA has answered the lawsuit by counsel and the matter is set to commence trial on March 2, 2027, in Department "M" of the Torrance Courthouse located at 825 Maple Avenue, Torrance, California, 90503.

9. This action is timely pursuant to the applicable FTCA and CTCA statutes, and the above recited facts.

10. Defendants DOES 1 TO 10, inclusive, are the fictitious names of those Defendants whose true names are unknown to Plaintiff, and whose true capacities, whether as individuals, corporations, partnerships, joint venturers and/or associations, are also unknown to Plaintiff, and when such true names are ascertained, Plaintiff will amend this complaint by inserting said true names in the place of said fictitious names in accordance with the Federal Rules of Civil Procedure. Plaintiff is ignorant of the true names and capacities of Defendants DOES 1 TO 10, inclusive, and each of them. Plaintiff is informed and believes and thereon alleges that, whenever and wherever in this Complaint all Defendants are the subject of the charging allegations by Plaintiff, said Does are also responsible in some manner for the events and happenings and it shall be deemed that said Defendants, DOES 1 to 10, inclusive, and each of them, are likewise the subject of said charging allegations herein by Plaintiff.

11. At all times herein mentioned, Defendants, and each of them, were the agents, servants, and/or employees of each of the other Defendants herein, and at the same time and place of the events hereinafter described, were acting within the course and scope of said agency and employment with the permission, agreement, consent, and ratification of the other Defendants and each of them.

12. Neither USA/TSA nor LAWA have (at this point) accepted responsibility for

- 3 -

COMPLAINT FOR DAMAGES

causing Plaintiff's injuries and damages as a result of the subject incident. Plaintiff does not know exactly from which of the Defendants sued herein she is entitled to redress, and whether she suffered the damages herein described due to the combined acts of the Defendants, or, one or more of them. Therefore, Plaintiff names all of the Defendants, and each of them, sued herein as enumerated on the caption page of this Complaint, and asks the Court to determine the nature and extent of the responsibility which falls upon each and all of said Defendants, either jointly or severally, as may be found liable.

## JURISDICTION AND VENUE

13.     This Federal District Court has jurisdiction in this matter that includes the USA as a defendant pursuant to 28 U.S.C. § 1346. Additionally, this Court has jurisdiction over all other claims pursuant to 28 U.S.C. § 1367 because all the claims arise out the same nexus of operative facts and are so intertwined that they cannot be reasonably separated.

14.     Venue is proper pursuant to 28 U.S.C. § 1402 because all the wrongful acts and/or omissions complained of herein occurred in this judicial district.

## FACTUAL ALLEGATIONS

15.     Now and at all relevant times mentioned herein, LAX was an international airport comprised of approximately nine interconnected airline terminals[2]. Upon information and belief, Plaintiff alleges that in 2024, over 76 million visitors traveled through LAX[3].

16.     Plaintiff is further informed, and believes, and thereon alleges that Terminal 3 at LAX is the Los Angeles home of Delta Air Lines, Inc., Aeromexico, and WestJet, and that in 2024, over 15,000,000 passengers traveled through Terminal 3[4].

17.     The incident that forms the basis of this lawsuit occurred on Sunday, August 18, 2024, at approximately 7:00 a.m. Plaintiff was a customer at LAX, Terminal 3, to take a flight on Delta Airlines to Denver, Colorado, on Flight No. DL 2828.

18.     At all relevant times, Plaintiff was lawfully on the premises of LAX.

19.     Plaintiff was required to pass through a TSA checkpoint.

[2] See https://www.flylax.com/lax%20new-terminal-maps
[3] See https://www.lawa.org/lawa-investor-relations/statistics-for-lax/10-year-summary/passengers
[4] See https://www.lawa.org/-/media/lawa-web/statistics/market-share-statistics/airlshare-2024.ashx

- 4 -

COMPLAINT FOR DAMAGES

20.     TSA is an agency within the Department of Homeland Security, which is a branch of the federal government of the United States of America.

21.     Plaintiff approached the TSA security checkpoint located at Terminal 3 in LAX.

22.     Plaintiff removed her shoes to comply with TSA security regulations for airline passengers.

23.     Plaintiff was only wearing socks on her feet.

24.     Plaintiff placed her shoes and purse in a bin on the conveyor belt to be scanned.

25.     Plaintiff then waited her turn to pass through the body scanner immediately adjacent to the area where she had placed her items to be scanned.

26.     Plaintiff was then directed by a TSA officer to start a new line at a different body scanner location to her left. A TSA officer gestured for Plaintiff to walk towards the scanner. Plaintiff complied and stepped in her socks in the direction of the scanner whereupon she was then caused to slip and fall on the slippery floor, a dangerous condition, located at TSA's checkpoint, and sustained serious injuries as more fully described below.

27.     As a result of the slip and fall on the slippery floor, Plaintiff has suffered serious bodily and emotional injuries, including but not limited to: (a) Left displaced angulated distal radius fracture that required surgical correction; (b) Permanent limitations in strength and mobility in left upper extremity; (c) Head injury / brain injury (concussion); (d) General damages, including but not limited to pain and suffering, loss of enjoyment of life, humiliation, emotional distress, and disfigurement; (e) Medical expenses in the past, present, and future; and (f) Lost earnings and earning capacity in the past, present, and future.  Plaintiff has incurred medical bills and has lost earnings in the past, and will incur them in the future. Plaintiff has also suffered pain and suffering damages, and serious emotional suffering as a result of the incident, and will continue to in the future.

28.     Defendants USA/TSA, LAWA and DOES 1 TO 10, inclusive, and each of them, are each individually, jointly, and severally responsible for the safety of business invitees such as Plaintiff when they are required to walk in their socks on the slippery airport and checkpoint floor.

29.     Upon information and belief, the marble-type floors at the checkpoint were

COMPLAINT FOR DAMAGES

slippery whether due to foreign substances spilled on them or due to the manner in which they were created and maintained.

30.     Upon information and belief, no warnings were placed advising passengers of the slippery floor conditions.

31.     Upon information and belief, the floors at the checkpoint were not treated with a readily available commercial non-stick coating to prevent passengers from slipping while they were negotiating the checkpoint in socks.

32.     Upon information and belief, the floors at the checkpoint were regularly inundated with spills of various substances from passengers.

33.     Upon information and belief, the floors at the checkpoint were not properly cleaned and maintained in a regular and timely manner by the Defendants.

34.     Upon information and belief, the floors at the checkpoint were serviced by the Defendants in such a manner as to increase the risk that passengers would slip on the floors, while they were in their socks.

35.     Upon information and belief, no effort was made by Defendants to avoid spills or slippery substances remaining on the slippery marble-type floors at the checkpoint.

36.     Upon information and belief, the Defendants had a duty to investigate whether the marble-type flooring at LAX was a slipping hazard for passengers walking in their socks.

37.     Upon information and belief, no effort was made by Defendants to place widely commercially available anti-slip mats in all locations where passengers were directed to traverse in their socks and stocking feet at the TSA checkpoints.

38.     Following the 2006 Robert Reid "shoe bomber" incident, all travelers were required to remove their shoes at TSA checkpoints.

39.     At that point, upon information and belief, the Defendants were placed on notice and knew or should have known that the marble-type flooring presented a slipping hazard for passengers wearing only socks on their feet at security checkpoints.

40.     Upon information and belief, the marble-type flooring, its maintenance, and slippery characteristics were not addressed or altered by Defendants, and each of them, in response

- 6 -
COMPLAINT FOR DAMAGES

to TSA's requirement that passengers walk on the flooring in their stocking feet.

41.    Despite knowledge of the above, the Defendants, and each of them, required business invitees to navigate the dangerous slippery marble-type floors of the TSA screening areas in their sock-clad feet, knowing full well that passengers were exposed to a risk of slipping and falling and injuring themselves.

## FIRST CAUSE OF ACTION

(Negligence Against Defendants USA and DOES 1 TO 10, Inclusive)

42.    Plaintiff incorporates by reference each and every allegation contained in paragraphs 1 through 41, above, as though fully set forth herein.

43.    The security checkpoint was maintained by employees of the United States of America's Transportation Security Administration (TSA) and was staffed with Transportation Security Officers (TSO's).

44.    Congress created the TSA after the terrorist attacks of September 11, 2001, with the enactment of the Aviation and Transportation Security Act, Pub. L. No. 107-71, 115 Stat. 597 (2001).

45.    Under that Act, TSOs perform screenings at TSA checkpoints in airports in the United States. See 49 U.S.C. § 44901(a).

46.    At all times material hereto, USA was responsible for the acts, omissions, negligence and all conduct of TSA, its agents, employees, servants and workmen.

47.    At all times material hereto, USA/TSA (along with LAWA as herein alleged in the Second Cause of Action) did own, possess, control, operate, supervise, maintain, and/or was responsible for allowing a dangerous condition to exist at its checkpoint, where Plaintiff was caused to slip and fall and sustain those injuries described below.

48.    Upon information and belief, USA/TSA (along with LAWA as herein alleged in the Second Cause of Action) did own, possess, control, operate, supervise, maintain, and/or was otherwise responsible for the condition of the floor located at or near its security checkpoint.

49.    USA/TSA is liable for personal injury caused by the negligent acts or omissions of any employee of USA/TSA acting within the scope of their office or employment under

circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the law of the place where the act or omission occurred. 28 USC § 1346 (b)(1).

50. Here, were USA/TSA a private business whose invitees were falling on its dangerous flooring, the business would be liable in tort to the Plaintiff. The above statute dictates that USA/TSA is similarly liable to the Plaintiff as any business owner would be for the negligent conduct described herein.

51. USA/TSA owed a duty to Plaintiff and all passengers to make sure through investigation, maintenance, surveillance, and supervision that the checkpoint could be navigated safely by passengers wearing socks.

52. USA/TSA breached that duty by failing to warn the Plaintiff of the slippery flooring.

53. USA/TSA breached that duty by failing to make sure that all areas of the checkpoint, where passengers would be in socks, were covered in rubber or other non-skid or slip resistant material.

54. USA/TSA breached its duty to Plaintiff by failing to make sure that the marble-like flooring at its Checkpoint was coated with a non-stick coating.

55. USA/TSA breached its duty to Plaintiff by failing to make sure that all areas of the checkpoint, where passengers would be in socks, were covered entirely by rubber non-slip floor mats.

56. USA/TSA breached its duty to Plaintiff by selectively placing rubber floor mats that were intended for the benefit of the TSA personnel, only, but ignored the safety of the Plaintiff and other invitees.

57. The aforementioned incident was the result of the negligence of the USA/TSA and its agents, servants, workmen, and/or employees and was due in no manner whatsoever to any act or failure to act on the part of Plaintiff.

58. USA/TSA knew or in the exercise, of reasonable care should have known of the slippery floor.

59. USA/TSA had a duty to inspect, maintain, warn of and/or otherwise correct the

dangerous condition of the slippery floor.

60. USA/TSA breached its duty to the Plaintiff and Plaintiff was injured as a result.

61. At all pertinent times, USA/TSA acted by and through its respective agents, employees, servants, and/or workmen who were acting within the course and scope of their employment and authority.

62. The aforementioned incident and the resulting injuries and/or damages sustained by Plaintiff directly and proximately resulted from the negligence of Defendant United States of America, acting by and through TSA, which conduct consisted of, but was not limited to, the following:

    a. failing to place a mat or non-skid material along the entire course of the checkpoint where business invitees would walk in their socks;

    b. failing to prevent pedestrians from walking in the area where the dangerous condition existed;

    c. failing to warn the Plaintiff of the hazardous condition and/or otherwise dangerous condition;

    d. failing to detect or recognize the existence of a dangerous condition in a highly trafficked area;

    e. failing to correct or otherwise remedy the aforesaid dangerous/hazardous condition after being put on notice of same;

    f. failing to maintain the premises and keep it in a safe condition so as not to constitute a snare, trap, obstruction, hazard or impediment to its visitors and people such as Plaintiff lawfully walking on the premises;

    g. failing to properly and adequately inspect said area to ascertain the existence of the dangerous and hazardous condition which existed;

    h. failing to properly and adequately correct the hazardous, dangerous and unsafe condition of the area;

    i. failing to exercise due care under the circumstances;

    j. being otherwise negligent as may more fully be revealed during discovery or at the time of trial of this matter;

    k. disregarding the rights, safety, and the position of the Plaintiff, who was a business invitee and failing to use the required degree of due care; and

    l. failing to maintain the premises used by pedestrians in a condition that would protect and safeguard persons such as the Plaintiff lawfully situated thereon.

COMPLAINT FOR DAMAGES

63. As a direct and proximate result of the wrongful conduct of USA/TSA, Plaintiff suffered and continues to suffer damages as a result of the incident, including but not limited to the following:

(a) Left displaced angulated distal radius fracture that required surgical correction;

(b) Permanent limitations in strength and mobility in left upper extremity;

(c) Head injury / brain injury (concussion);

(d) Other injuries to her person, nervous system, extremities, and body;

(e) General damages, including but not limited to pain and suffering, loss of enjoyment of life, humiliation, emotional distress, and disfigurement;

(f) Medical expenses in the past, present, and future; and

(g) Lost earnings and earning capacity in the past, present, and future.

64. Plaintiff seeks and is entitled to obtain a judgment for damages against USA/TSA, according to proof, plus daily pre-judgment interest as permitted by law, if applicable, costs of suit, and such other and further relief as the Court deems proper.

65. As a direct and proximate result of the incident, Plaintiff has been unable to undertake her usual and customary duties and activities and believes that she will continue to suffer impairments and disabilities into the future.

66. As a direct and proximate result of the incident, Plaintiff was forced to miss extended time from her usual activities, including work, resulting in lost earnings.

67. As a direct and proximate result of the incident, Plaintiff has and may be obliged in the future to receive and undergo reasonable and necessary medical treatments and rehabilitative services for the injuries she suffered and may be obliged to expend such sums or to incur such expenditures for an indefinite time in the future.

68. As a direct and proximate result of the incident, Plaintiff has suffered and in the future will continue to suffer great pain, agony, and a diminution of her ability to enjoy life and life's pleasures, including but not limited to permanent impairment of her bodily abilities.

69. As a further direct and proximate result of the subject incident, Plaintiff has already expended and may in the future be compelled to expend a large sum of money for physicians,

- 10 -
COMPLAINT FOR DAMAGES

imaging, tests, monitoring, physical therapy, and the like, in an effort to cure herself of her injuries and/or suffering, which were brought about as a result of the incident.

70.     Plaintiff is informed and believes and thereon alleges that all of her injuries, damages and/or losses may be permanent in nature.

**SECOND CAUSE OF ACTION**

(California Tort Claims Act - Cal. Gov. Code §§ 815.2 and 835 Against

Defendants LAWA and DOES 1 TO 10, Inclusive)

71.     Plaintiff incorporates by reference each and every allegation contained in Paragraphs 1 through 41 above, as though fully set forth herein.

72.     Pursuant to the California Torts Claim Act Cal. Gov. Code §§ 810 et seq., including, but not limited to, §§ 815.2 and 835, LAWA is liable to a Plaintiff for the negligence of its employees and/or agents, and by failing to take reasonable steps to avoid and correct the existence of dangerous conditions at LAX.

73.     Upon information and belief, the marble-type flooring, its maintenance, and slippery characteristics were not addressed or altered in response to TSA's requirement that passengers walk on the flooring in their socks.

74.     Despite knowledge of the above, LAWA (along with USA/TSA as herein alleged in the First Cause of Action) required business invitees to navigate the dangerous slippery marble-type floors of the TSA screening areas in their sock-clad feet, knowing full well that passengers were exposed to a risk of slipping and falling and injuring themselves.

75.     At all times material hereto, LAWA (along with USA/TSA as herein alleged in the First Cause of Action) was responsible for allowing a dangerous condition to exist at the TSA security Checkpoint.

76.     Upon information and belief, LAWA had both actual and constructive notice of the dangerous condition of its real property.

77.     Upon information and belief, LAWA had been on notice of the dangerous and defective condition of its flooring for an extended period of time and a sufficient period of time to remedy the dangerous condition.

COMPLAINT FOR DAMAGES

78. Following the shoe bomber incident, LAWA had ample time in which to apply a slip-resistant coating to LAX's floors and failed to do so.

79. As a result, LAX's floors were defective in that their slipperiness presented a known and unavoidable hazard to business invitees.

80. LAWA was required to investigate this defective condition and should have been aware that multiple slip resistant solutions existed for floors such as those in use by TSA at LAX, (including but not limited to rubber mats and slip resistant coating) but failed to take such measures to make passengers safe.

81. Upon information and belief, LAWA (along with USA/TSA as herein alleged in the First Cause of Action) was responsible for the safe condition of the flooring located at Terminal 3 by the security checkpoint.

82. The aforementioned incident was the result of the negligence of LAWA and the other Defendants, and was due in no manner whatsoever to any act or failure to act on the part of Plaintiff.

81. Upon information and belief, LAWA knew or in the exercise, of reasonable care should have known that the floor at the security checkpoints was slippery and posed a danger or passengers wearing only socks on their feet.

83. Upon information and belief, LAWA had a duty to inspect, maintain, warn of and/or otherwise correct the condition of the slippery floor.

84. Upon information and belief, LAWA did not warn the Plaintiff or other passengers of the dangerous slipperiness of the flooring that they were forced to walk over.

85. LAWA breached its duty to the Plaintiff and Plaintiff was injured as a result.

86. At all pertinent times, LAWA acted by and through its respective agents, employees, servants, and/or workmen, who were acting within the course and scope of their employment and authority.

87. The aforementioned incident and the resulting injuries and/or damages sustained by Plaintiff directly and proximately resulted from the negligence of LAWA and its agents/employees, which conduct consisted of, but was not limited to, the following:

- 12 -
COMPLAINT FOR DAMAGES

a.    failing to place a mat or non-skid material along the entire course of the checkpoint where business invitees would walk in their socks;

b.    failing to prevent pedestrians from walking in the area where the dangerous condition existed;

c.    failing to warn the Plaintiff of the hazardous condition and/or otherwise dangerous condition;

d.    failing to detect or recognize the existence of a dangerous condition in a highly trafficked area;

e.    failing to correct or otherwise remedy the aforesaid dangerous/hazardous condition after being put on notice of same;

f.    failing to maintain the premises and keep it in a safe condition so as not to constitute a snare, trap, obstruction, hazard or impediment to its visitors and people such as Plaintiff lawfully walking on the premises;

g.    failing to properly and adequately inspect said area to ascertain the existence of the dangerous and hazardous condition which existed;

h.    failing to properly and adequately correct the hazardous, dangerous and unsafe condition of the area;

i.    failing to exercise due care under the circumstances;

j.    being otherwise negligent as may more fully be revealed during discovery or at the time of trial of this matter;

k.    disregarding the rights, safety, and the position of the Plaintiff, who was a business invitee and failing to use the required degree of due care;

l.    failing to maintain the premises used by pedestrians in a condition that would protect and safeguard persons such as the Plaintiff lawfully situated thereon; and

m.    violating California Government Code sections 815.2 and 835.

88.    As a direct and proximate result of the wrongful conduct of Defendants, and each of them, Plaintiff suffered and continues to suffer damages as a result of the incident, including but not limited to the following:

(a)    Left displaced angulated distal radius fracture that required surgical correction;

(b)    Permanent limitations in strength and mobility in left upper extremity;

(c)    Head injury / brain injury (concussion);

(d)    Other injuries to her person, nervous system, extremities, and body;

(e)    General damages, including but not limited to pain and suffering, loss of enjoyment of life, humiliation, emotional distress, and disfigurement

- 13 -

(f)     Medical expenses in the past, present, and future

(g)     Lost earnings and earning capacity in the past, present, and future.

89.     Plaintiff seeks and is entitled to obtain a judgment for damages against LAWA, and the other Defendants, according to proof, plus daily pre-judgment interest as permitted by law, if applicable, costs of suit, and such other and further relief as the Court deems proper.

90.     As a direct and proximate result of the incident, Plaintiff has been unable to undertake her usual and customary duties and activities and believes that she will continue to suffer impairments and disabilities into the future.

91.     As a direct and proximate result of the incident, Plaintiff was forced to miss extended time from her usual activities, including work, resulting in lost earnings.

92.     As a direct and proximate result of the incident, Plaintiff has and may be obliged in the future to receive and undergo reasonable and necessary medical treatments and rehabilitative services for the injuries she suffered and may be obliged to expend such sums or to incur such expenditures for an indefinite time in the future.

93.     As a direct and proximate result of the incident, Plaintiff has suffered and in the future will continue to suffer great pain, agony, and a diminution of her ability to enjoy life and life's pleasures, including but not limited to permanent impairment of her bodily abilities.

94.     As a further direct and proximate result of the subject incident, Plaintiff has already expended and may in the future be compelled to expend a large sum of money for physicians, imaging, tests, monitoring, physical therapy, and the like, in an effort to cure herself of her injuries and/or suffering, which were brought about as a result of the incident.

95.     All of Plaintiff's injuries, damages and/or losses may be permanent in nature.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment in her favor and against Defendants in an amount in excess of Seventy-Five Thousand Dollars ($75,000.00) as follows:

1.     For general damages, including but not limited to pain and suffering and emotional

COMPLAINT FOR DAMAGES

injuries, in an amount to be demonstrated according to proof at the time of trial;

2.   For medical, hospital, surgical, and related expenses in an amount to be demonstrated according to proof at the time of trial;

3.   For lost earnings in the past, present, and future, and future earning capacity in an amount to be demonstrated according to proof at the time of trial;

4.   For an award of daily pre-judgment interest;

5.   For costs of suit; and

6.   For such other and further relief as the Court may deem proper.

Dated: October 24, 2025          SCOLINOS, SHELDON & NEVELL LLP

By: _____
DANIEL G. SHELDON
Attorneys for Plaintiff CORINNE BOHRER

**DEMAND FOR TRIAL BY JURY**

Plaintiff CORINNE BOHRER hereby demands trial by jury.

Dated: October 24, 2025          SCOLINOS, SHELDON & NEVELL LLP

By: _____
DANIEL G. SHELDON
Attorneys for Plaintiff CORINNE BOHRER

- 15 -
COMPLAINT FOR DAMAGES